### WIETERS v. MAY.
### WIETERS v. GIDEON.
### WIETERS v. BATEMAN.

STATE CONSTABLE—DISPENSARY LAW—OFFICIAL BOND.—If a State constable, while attempting to execute some duty under the dispensary law, abuses or exceeds his authority, or executes it in an unlawful manner to the injury of another, his official bond is liable.

Before ALDRICH, J., Charleston, February, 1904. Affirmed.

Three cases by Rudolph D. Wieters against J. A. May and J. M. Polatty; same against M. B. Gideon, L. H. Wilson and M. C. Pool; same against J. F. Bateman, J. F. Schmidt, W. H. Griffin and A. F. Funderbunk. From Circuit orders refusing to strike out certain allegations, defendants, May, Gideon and Bateman, appeal.

*Messrs. Bellinger, Townsend & Haskell,* for appellants, cite: *An assault and battery or other unlawful violence committed by a constable does not constitute a breach of his official bond:* 2 Utah, 284; 30 N. C., 415; 26 S. E. R., 700; 25 Ency., 2 ed., 723; 40 L. R. A., 631; 54 Md., 325; 22 Ency., 556. *The conditions of these bonds are same as those of sheriffs and constables, and under the rules applied to them these bonds are not liable:* 25 Ency., 658, 723; 111 U. S., 17; Code, 1902, 584, 661, 595; 18 How., 402; 1 Chitty Pl., 125, 132, 134; 1 Tidd. Prac., 4; 17 S. C., 4; 37 S. C., 181, 577; 29 S. C., 187; Bond. Inst., secs. 3481-2-3-4-6; Harp., 486; 1 Bail., 441; 2 Brev., 491; 21 Ency. P. & P., 902, 916-7; 4 McC., 33; 1 Bail., 457; 1 Speer, 238; 1 Rich., 148; 30 N. C., 415; 33 N. C., 141; 26 S. E. R., 700; 66 Ky., 67; 2 Utah, 284; 45 Ill., 73; 132 Ind., 371; 28 Neb., 707. *Sureties are not liable for tortuous act where the officer acts colore officii, without process or upon void process:* 42 L. R. A., 851; 43 C. C. A., 218; 28 N. J. L., 230; 9 Mo. App., 63; 95 N. W., 769; 45 Pa., 535; 4 Strob., 30; 37 Ill. App., 490; 21 Wis., 684; 21 L. R. A., 738; 7 B. Mon., 250; 32 Wis., 233; 37 Wis., 43; 72 N. C., 110; 58 Miss., 717; 21 L. R. A., 738; 31 Ala., 465; 2 Ala., 728; 51 Ala., 364; 21 L. R. A., 738; 39 Pac., 903; 45 Wis., 204. *No allegation that constables were acting virtute officii and states no cause of action:* 15 Ency. P. & P., 132; 7 Tex. Civ. App., 625; 29 N. E. R., 157; 10 Rich., 442.

*Mr. J. K. P. Bryan,* contra, cites: *Wrongs done by constable colore officii make him liable on his official bond:* 2 McM., 323; 25 Ency., 2 ed., 723, 724, 726, 727; 88 Md.,

601; 137 Mass., 191; 10 Met., 309; 111 U. S., 17; 67 S. C., 497; 42 L. R. A., 423. *Common law action trespass vi et armis upon property and upon persons now maintainable against official bond:* 17 Grat., 131; 9 Gratt., 602; 111 U. S., 20; 137 Mass., 191; 42 L. R. A., 426; Murfree Sheriffs, secs. 60, 303; Smith Sheriff, 21; 15 L. R. A., 558; 91 Ia., 564; 91 Wis., 201; 120 N. C., 60; 11 Ind. App., 392; 19 N. C., 264; 25 Ency., 2 ed., 727; 19 Ky. L., 648; 32 Ill. App., 250; 11 Ohio C. C., 403; 74 Ia., 743; 49 Ia., 315; 14 Wash., 582; 68 Conn., 7; 61 Minn., 432; 28 N. Y. S. R., 98.

March 6, 1905. The opinion of the Court was delivered by

MR. JUSTICE JONES. The cases above entitled were heard together, as they involve the same question. The action in each case is against a State constable under the dispensary law, and his sureties. The appeal is from an order of the Circuit Court refusing a motion in each case to strike out certain portions of the complaint.

The complaint in the first named case, after stating that the plaintiff was a resident merchant, doing business in the city of Charleston, and that defendant, May, at the times thereinafter mentioned, was a State Constable, appointed under the dispensary law, in the third and fourth paragraphs alleged as follows:

"3d. That as such State Constable, the defendant, J. A. May as principal, and the other said defendant, as surety, gave bond to the State of South Carolina in the sum of $500 for the faithful performance of the duties of his said office by the said defendant, J. A. May, a copy of which bond is hereto annexed and made a part of this complaint.

"4th. That the defendant, J. A. May, has committed a breach of said bond, and the plaintiff has been aggrieved thereby, as follows, to wit: That on the night of the 22d of August, 1903, in the city and county of Charleston, S. C., at plaintiff's store, 82 Calhoun street, the said J. A. May, as

such State Constable, entered upon the said premises of the plaintiff, and then and there while acting as such State Constable, in breach of said bond, being armed with pistols and clubs, did violently assault and set upon the plaintiff and threaten to shoot and kill plaintiff, and did strike plaintiff with clubs and pistols on his face and head and body, cutting open his head and face and seriously bruising plaintiff's body and injuring plaintiff internally."

Attached to the complaint was a copy of the alleged bond, payable to the State, in the sum of $500, conditioned that said May "shall faithfully perform the duties of said office as now or hereafter required by law, during the whole period he may continue in said office."

The motion was to strike out the whole of the third paragraph, and the first three lines of the fourth paragraph, down to and including the words "to wit," and also to strike from said paragraph the words "in breach of said bond."

We think the Court committed no error in refusing the motion. Appellant's conception of his right to strike out is necessarily based upon his construction of the complaint as one *ex delicto* for damages for an unlawful assault and battery. If this were so, then manifestly the motion should have prevailed, as the allegations concerning the bond and its breach would not be relevant. But the action is undoubtedly upon the bond for its breach, and the allegations touching the assault and battery are intended to show what was done in breach of the bond. The allegations sought to be stricken out are not only entirely relevant, but in the main, are essential to the cause of action attempted to be stated.

Counsel on both sides have argued with learning and ability, whether an assault and battery or other unlawful violence by a State Constable can constitute a breach of his official bond. Such a question would more properly arise upon a demurrer to the complaint for insufficiency, but none of the defendants have demurred. Nor has there been any effort to have the allegations as to the breach of the bond

made definite and certain; therefore, there is now no question properly made as to the sufficiency or definiteness of the complaint in this regard. We might, for that reason, properly decline to consider the question made in argument. But inasmuch as it may expedite the final disposition of these cases, we will respond to the inquiry made.

An unlawful assault and battery may constitute a breach of a constable's bond, under the limitations hereinafter mentioned. The bond, like the bonds of officers generally of this State, is conditioned for a "faithful performance of the duties of his office." Sec. 661, vol. 1, Civil Code, provides: "The governor shall have authority to appoint one or more State Constables * * * to see that the dispensary law is enforced. * * * Such constables shall, before entering upon the duties of their office, each give bond to the State in the sum of $500, with surety or sureties, to be approved by the attorney general, conditioned for the faithful performance of the duties of his office; and, in case of a breach of said bond, suit may be brought thereon by any person aggrieved thereby. * * *"

Sec. 595, Civil Code, vol. 1, provides: "The bond of any public officer in this State may, at all times, be sued on by the public or any corporation or private person aggrieved by any misconduct of any such public officer."

One of the main duties of a State Constable is the enforcement of the dispensary law. By sec. 581, Criminal Code, he is authorized to seize contraband liquor without a warrant; and by sec. 590, he may arrest without warrant any person detected openly in the act of violating any of the provisions of the dispensary law.

When a suit is upon the bond against the constable and his sureties, the extent of the liability is to be ascertained from the terms of the bond, strictly construed, so as not to extend the liability of a surety by implication beyond its terms, but also reasonably construed, so as not to defeat the purpose of requiring sureties for the protection of the public

against official misconduct. The bond cannot cover any act or omission of a constable done without any authority of law whatever, or in his private or personal capacity as man or citizen, but it protects alone for what he does, or omits to do, unlawfully in the execution of his office or some official duty imposed by law. This is shown in our cases with reference to liability on bonds of sheriffs and ordinaries.

In the case of *State* v. *White,* 10 Rich., 442, sureties on bonds of an ordinary were held not liable for funds received by him as ordinary without authority of law. The same rule was enforced in *Elliott* v. *Jeter,* 59 S. C., 483, 38 S. E., 124, wherein it was held that sureties on official bond of probate judge were not liable for funds coming into his hands from sales in partition made since November 27th, 1878, as a probate court had no jurisdiction to make such sales. In the case of *Allen* v. *Ramey,* 4 Strob., 30, the sureties of a sheriff were not liable for printers' fees which the sheriff collected or failed to collect, and refused or neglected to pay over, on the ground that it was not the official duty of a sheriff to collect such fees of a printer, it being a matter of private contract between the sheriff as an individual and the printer. In the case of *Malony* v. *Buckner,* 2 McM., 322, the Court held the sureties on a sheriff's bond liable for fees improperly collected, and in that case the Court stated the following rule: "Whatever, in the execution of his office or in the character of a public officer properly recognized, the sheriff may do or omit, whereby damages results to another, seems to be a violation of the duties of his office, and the damage proved may be recovered under the bond." The sheriff had authority to collect fees, but abused or exceeded his authority by exacting fees in excess of what was allowed by law. But in the same case, entitled as *Treasurers* v. *Buckner,* 2 McM., 326, the rule is more fully stated, as follows: "Where a sheriff has no process giving him authority to receive, a person who pays to his deputy cannot look to him—*Childs* v. *Holloway,* 4th McCord, 164; and, if one de-

ceived by no show of authority, should pay to J. S. himself, then being sheriff, that which a sheriff had not authority to receive, his recourse would be to J. S., personally, and not to the sheriff's bond. But where a sheriff, having writs which authorize him to collect, exacts from the debtor more than can lawfully be required, even without levy, the payment is not voluntary. 1st McCord, 396; Cheves L. R., 113; and the sheriff, either wilfully abuses his office, or negligently or unskillfully performs his duty, so as to violate the condition of his official bond."

In considering this question, liability on official bonds, some Courts have adopted a distinction between acts *virtute officii* and acts *colore officii,* holding sureties on official bonds liable in the former case and not in the latter. A definition of such acts is thus stated in *People* v. *Schuyler,* 4 New York, 173, founded on the common law: "Acts done *virtute officii* are where they are within the authority of the officer, but in doing it he exercises that authority improperly, or abuses the confidence which the law reposes in him; whilst acts done *colore officii* are where they are of such nature that his office gives him no authority to do them." This distinction is said to be disregarded in most jurisdictions, 25 Ency. Law, 2d ed., 724, and in a very full and able note in 91 Amer. St. Rep., 511, Mr. Freeman, the author, says, what our investigation convinces us is true, "The distinction suggested has been productive of anything but harmony among the authorities, and in its attempted application to particular cases it has served to confuse rather than clarify. It is a distinction hard to make in theory and even more difficult to apply in practice. Not only do Courts differ as to liability of sureties for acts *colore officii,* but among those authorities which agree that such acts are covered by the obligation of the bond, the most widely divergent views are entertained as to what constitute acts *colore officii,* within the meaning of the definition."

The lawful acts of an officer, of course, can create no lia-

bility whatever; but if an officer, a State Constable, while attempting ·to· execute some duty of his office, abuses or exceeds his authority or executes it in an unlawful manner, to the injury of another, his bond is liable. To illustrate: If a State Constable, in an attempt to· discharge a duty of his office, in the seizure of contraband liquor or the arrest of one openly violating the dispensary law, should, without just excuse, commit an assault and battery, or if in overcoming resistance, he should so· exceed his duty as to· become the aggressor in an assault and battery, to· the injury of another, then there is liability upon his bond. But an assault and battery committed by a constable under a bald assumption and usurpation of authority, without process or authority of any kind, would not be covered by the terms of his bond. These conclusions are not only the result of our own cases, but are supported by the general trend of authority in other jurisdictions, among which we cite the following: *Droles-baugh* v. *Hill* (Ohio), 60 N. E. Rep., 202; *Hawkins* v. *Thomas* (Ind.), 29 N. E. Rep., 157; *Brown* v. *Weaver* (Miss.), 42 L. R. A., 423; *Johnson* v. *Williams* (Ky.), 54 L. R. A., 220; *Clancy* v. *Kenworthy* (Iowa), 7 Amer. St. Rep., 508.

The judgment of the Circuit Court is affirmed.