15133

HUNTER *ET AL.* v. BOYKIN *ET AL.*

(10 S. E. (2d), 152)

June, 1939.

*Messrs. Gettys & Shannon,* for appellant,

*Mr. Harold W. Funderburk,* for appellant,

*Mr. Allen B. Murchison,* for respondent,

*Messrs. Cooper & Maher,* for respondent,

July 23, 1940.

The opinion of the Court was delivered by MR. JUSTICE STUKES.

This action was commenced on February 4, 1938, by the distributees at law of Simpson Hunter, who died in the military service in the late World War, against L. D. Boykin, who was appointed administrator of the estate of the latter in the Probate Court of Kershaw County in October, 1932, and his bondsman as such, American Surety Company, for`the sum of approximately $1,800.00 (later developed in the testimony to have been reduced to a lesser amount by partial restitution by the *Probate Judge*) allegedly misapplied by the administrator. On motion of these defendants there were added as such by order of the Court the former Probate Judge, in whose term of office the matters and things alleged in the complaint took place, his official bondsman, Hartford Accident and Indemnity Company, and his clerk, Sallye Massey. The action was by consent referred to the Master to take and report the testimony and his conclusions of fact with respect to such issues as were agreed by the parties to be necessary to determine. He took much testimony and certain exhibits were introduced in evidence, apparently all of which being set forth in the record here. He reported that the parties did not call to his attention "any issues or conflict in the testimony upon which they desired him to report his· findings of fact and it appears   *   *   * that the agreed statement of facts signed by the attorneys of record contain the material facts."

Reference will be hereafter made to some of the contents of this agreement, to some of the facts stated by the Master in his report and possibly to other facts established by the evidence, hence they need not be now recounted. The exceptions do not question the findings of fact contained in the decree but only impute error of law, hence the portion of the judg-

ment of his Honor, the trial Judge, relating to the facts is here set forth:

"This matter was argued before me by counsel for the interested parties and written briefs were later submitted on behalf of the respective parties. In both oral arguments and in the briefs, several questions of law were argued. However, since the filing of the briefs, by written agreement signed by all parties or their attorneys, the sole question now presented for my decision is 'the question of the liability of the bonds of the defendants, American Surety Company and Hartford Accident and Indemnity Company.'

"The facts appearing from the agreed statement and the testimony so far as they bear upon the liability under the bonds in question are as follows:

"L. R. Jones was the duly qualified and elected Judge of Probate for Kershaw County during the time in question, and the Hartford Accident and Indemnity Company was the surety upon his official bond. This bond was properly executed approved, filed and recorded as required by law.

"The condition of this bond pertinent to the issues, is as follows:

" 'Now the Condition of the Above Obligation is such That if the above bound L. R. Jones shall well and truly perform the duties of said office as now or hereafter required by law, during the whole period he may continue in said office, then the above obligation to be void and of none effect or else to remain in full force and virtue.'

"Petition for letters of administration upon the estate of Simpson Hunter was made by Lynch D. Boykin, on September 2, 1932. The petition sets forth that Simpson Hunter died intestate upon the  *  *  *  day of  *  *  *  1918, leaving an estate consisting of $5,000.00 veteran's insurance. Thereafter, citation was duly issued as required by law, and Lynch D. Boykin, upon executing and delivering unto L. R. Jones, Judge of Probate for Kershaw County, his bond in the full and just sum of $10,000.00, with the American

Surety Company as surety, thereon, and subscribing to the required oath, received the appointment as administrator of the estate of Simpson Hunter, deceased.

"The condition of the administrator's bond is as follows:

" 'The Condition of the Above Obligation is such That if the above bound Lynch Boykin, administrator of the goods, chattels, and credits of Simpson Hunter, deceased, do make a true and perfect inventory of all and singular the goods, chattels and credits of the said deceased, which have or shall come to the hands, possession or knowledge of the said Lynch D. Boykin or into the hands or possession of any other person or persons, for him and the same so made, do exhibit unto the said Probate Court for Kershaw County, when he shall be thereunto required, and such goods, chattels and credits do well and truly administer, according to law, and make a just and true account of his actings and doings therein when required by the said Court—and all the rest of the said goods, chattels and credits which shall be found remaining upon the account of the said administration, the same being first allowed by the Court, shall deliver and pay unto such persons, respectively as are entitled to the same by law; and if it shall thereafter appear that any last Will and Testament was made by the said deceased, and the same be proved in Court, and the executors obtain a Certificate of the Probate thereof, and the said Lynch D. Boykin do in such case, if required, render and deliver up said Letters of Administration, then this obligation to be void, or else to remain in full force.'

"Upon the execution of this bond by the American Surety Company, it demanded the right of 'joint control' of the funds coming into the hands of the administrator and notified the bank where such funds were deposited that no checks, drafts or other legal written orders drawn by the administrator should be honored unless approval thereof by the American Surety Company was endorsed thereon in writing.

"As the end of the administrative year approached, Jones, the Probate Judge, wrote to Boykin, the administrator, to come to his office and make his return so as to .avoid the payment of an additional bond premium. In response to this communication, Boykin went to the office of the Judge of Probate. The question of the disbursement of the money belonging to James Hunter and Boykin Hunter, the two heirs of Simpson Hunter whose whereabouts were unknown, arose, and the Judge of Probate told the administrator that these missing heirs would have to be advertised for, as required by statute, but that he (the Judge of Probate) would attend to the matter of the advertisement.

"Boykin petitioned for his discharge, the petition being prepared by L. R. Jones, the Judge of Probate, and after the publication of the advertisement, as required by law, for the final discharge, Boykin went to the Judge of Probate's office for the purpose of receiving his discharge. At this time the Judge of Probate instructed the administrator to draw a check upon the estate funds payable to him for the two· shares to which James Hunter and Boykin Hunter, the missing heirs, would be entitled, and that he, the said L. R. Jones (the Judge of Probate), would attend to the advertisement required by law and pay the money over to those rightfully entitled thereto. Boykin, the administrator, then drew his check as administrator, payable to 'L. R. Jones', for the sum of $1,552.98. *This check had been previously countersigned in blank by the duly authorized agent of the American Surety Company.* At the same time Boykin drew a check payable to Johnnie Solomon in the sum of $258.83, representing the distributive share of Johnnie Solomon, a minor. *This check had also been previously countersigned in blank by the duly authorized agent of the American Surety Company.* The administrator then drew a check payable to himself as administrator in the sum of $71.79, as extra compensation. This check had also been previously countersigned in blank by the duly authorized agent of the American Surety Com-

pany. The administrator delivered the first two checks to the Judge of Probate and received his discharge.

"The checks were *prepared* and *delivered* by the administrator to the Judge of Probate upon the advice and instruction of the Judge of Probate. The proceeds of the two checks eventually went to the personal use or credit of L. R. Jones, and have not been accounted for by him in any manner whatsoever. There can be no doubt that Boykin in preparing and delivering the checks to L. R. Jones, as Judge of Probate, thought that he was carrying out his duty as administrator, and that the persons entitled to the money would receive it from the Judge of Probate. But, the Judge of Probate instead of paying these monies over to those entitled to receive the same, converted them to his own use.

"The foregoing facts raise the question as to whether or not the American Surety Company, the surety on the administrator's bond, is liable for the payment of the monies embezzled by L. R. Jones, the Probate Judge, or whether the loss must fall upon the Hartford Accident and Indemnity Company, the surety on the official bond of L. R. Jones, as Probate Judge."

The Court resolved the stated question, last above quoted, against the bondsman of the administrator upon the authority of the cited cases of *State v. White et al.,* 10 Rich., 442, and *Snyder et al. v. Scott et al.,* 174 S. C., 403, 177 S. E., 665, and added as a reason for his conclusion that the administrator's surety had failed to exercise its reserved right of joint control of the estate funds; and it was held that the American Surety Company is liable to plaintiffs, with no liability upon Hartford Accident and Indemnity Company and as to the latter the complaint should be dismissed and the action continued as to the former. This appeal was prosecuted by the American Surety Company and by the administrator, Boykin.

The agreed Transcript of Record contains the following, by which we shall of course be guided: "The sole question,

therefore, passed upon by Judge Bellinger, and now before this Court for determination, is as to the liability of the bonds of the defendants American Surety Company and Hartford Accident and Indemnity Company."

The case in the form it thus reaches this Court is a most unusual one. The agreement in the Transcript, last quoted above, confines us to a decision as to *which surety company shall be held liable* to plaintiffs; but lest there be misunderstanding we think it should nevertheless be said that the record clearly establishes the liability of the administrator and his bondsman to plaintiffs for the missing funds. However, in praiseworthy prevention of another litigation it is sought to apply the alleged liability of the Probate Judge and his bondsman to the administrator, in the nature of recoupment by the latter, directly to the payment of plaintiffs' claim.

There are seven exceptions which impute error to the trial Judge in fixing the liability upon the American Company and absolving the Hartford Company, but in view of the conclusion we reach it is unnecessary to treat them separately.

The record discloses an honorable and well-intentioned administrator, who, however, was entirely inexperienced and uninformed as to his duties, except for the information concerning such duties which was given him by a dishonest Probate Judge. The latter advised the fiduciary against the employment of counsel, assuring him that he was also an attorney and to the effect that the administrator might safely follow his counsel and instructions.

In advance of the time for the scheduled final disbursement and accounting the administrator discussed with the Judge the necessity for appropriate action with respect to the absent distributees whose whereabouts had been for many years unknown to their local relatives; he was told by the Judge that he would attend at the proper time to the advertisement for them, presumably referring to the procedure out-

lined in Code, Section 9022, *et sequi*. When the administrator went to the office of the Judge for the purpose of making his final accounting and return at the expiration of one year from the date of his appointment, after having been so directed to do by letter from the Judge, he prepared one check for the funds which represent the most of the present claim of the plaintiffs, being the aggregate of the shares of the absent distributees, payable to the Judge personally *under his express direction*; and a check for a smaller amount, the share of a minor distributee for whom no guardian had been appointed, he made payable to the distributee; and *also at the express direction of the Judge* both of the checks were delivered to the latter at his desk. At the same time the final return of the administrator was prepared by the Court showing full distribution to the distributees, each by name, and the Judge took the oath of the administrator thereupon. Then, part and parcel of the same transaction, the Court prepared, executed and issued a final discharge to the unsuspecting administrator to whom a copy of the discharge was given.

There are other details, unnecessary to consider, of acts of fraud and imposition of this then Judge of Probate upon the administrator who was thereby misled to put it within the power of this perfidious official to prey upon the undistributed funds of the estate by converting the most of them to his own use, which he promptly did, and these acts of fraud were committed while he was clothed with judicial authority as the result of the willingness of his surety to furnish, for consideration, a written financial guaranty, his official bond, that he would well and truly perform the duties of his office.

Let us see whether these regrettable facts bring this case within the authorities relied upon in the Court below whereby the loss would be visited upon the surety of an honest and conscientious layman instead of that of an unfaithful and culpable Judge of Probate who was also an attorney at

law. Unless we are so bound we feel that justice requires the contrary result.

The facts in *State v. White, supra,* were not at all those of the instant case. The funds involved were derived from an estate long administered and closed. They constituted a trust under the terms of a will in which a trustee was named with the direction that should he die the then Ordinary (now called Probate Judge) should appoint a successor trustee. At the death of the named trustee, who had qualified and faithfully served, upon the petition of his executor the then Ordinary. Lesly, took charge of the fund and likewise faithfully administered it until the expiration of his term of office when he turned it over to his successor upon demand. The fund was converted or dissipated by the latter against whose bondsmen suit was brought in behalf of the *cestui que* trust, but it was held that there was no liability because the fund was no part of an estate in administration and therefore, Les'y and his successor did not receive it in their official capacities. This statement of the facts is sufficient to clearly distinguish the case from the present problem. Here the funds were of an estate in administration in the Court of the defaulting Probate Judge and he actively procured the payment of such to him, whereas in the *White case* the funds were paid to the Ordinary as a trustee under the terms of the will of a testator whose personal estate had long since been completely administered.

The finding of fact and law by the Master, confirmed by the Circuit Court and affirmed on appeal here, in the case of *Snyder et al. v. Scott et al., supra,* was as follows (174 S. C., 403, 177 S. E., 668) : "The former probate judge simply received certain funds without authority of law, and, under the decisions of our courts, as I construe them, her bond is not liable therefor." It is noteworthy that in the same paragraph of the report in which the foregoing occurred, it was also said: "It is indeed true that where the probate judge, or any public official under bond, fails to dis-

·charge the duties of his office as may be required by law, for instance, where he negligently fails to require a good and sufficient bond for an administrator or any other fiduciary, then and in such case the sureties on his bond would become liable." There, then, there was not even negligence on the part of the official while here there was a willful failure on the part of the Judge to perform his duties and the active and fraudulent procurement by him of error on the part of the administrator. Surely it cannot be reasonably contended that this case is controlled by the *Snyder case*, correct though the latter was under its facts.

Consideration of the applicable statutes leaves no doubt that it is the duty of a Probate Judge to properly supervise the actions of the fiduciaries appointed by and reporting to his Court; and there are many specific ministerial duties detailed in the Code. Section 9012 defines the duties of the Judge with respect to the time and nature of the returns and accounts, which latter shall be examined and approved by the Court; and here the latter knowingly prepared and procured the verification by the administrator of a false return upon which his discharge was improperly and illegally issued. Likewise it was the duty of the Probate Judge in this instance, with his knowledge of the fact that there were unlocated distributees, to issue and publish a citation to them before the final accounting and discharge of the administrator, see Sections 9022-9026; particularly, Section 9024 enjoins the Court when and under what circumstances a decree of distribution shall be made in such cases.

Another section violated by the Judge is 213 to the effect that "it shall not be lawful for any Judge of Probate * * * to grant a final discharge to any * * * administrator * * * unless * * * (he) * * * shall have finally accounted for the estate * * * ." The record is convincing that the administrator parted with the funds only upon the inducement of. the Judge, consisting largely of the issuance of the

purported final discharge which was granted upon the fictitious account prepared by the Judge, all in knowing violation by the latter of the quoted statute. It is an inescapable inference that the administrator would have held the funds but for the inducement of the discharge and the false and fraudulent assurances of the Judge.

The aforementioned (and possibly other) Code sections, which include numerous ministeral duties as distinguished from judicial functions, were willfully violated by the Probate Judge and no inference can be drawn from the evidence other than that such was done for his malevolent purpose of obtaining possession of the funds in order to convert them to his own use. It is a source of gratification that able counsel have cited no similar case in this jurisdiction, from which it may be fairly assumed that there is none; we know of none.

It is not amiss to quote former Chief Justice Blease from the opinion in the case of *Gullick v. Slaten,* 169 S. C., 244, 168 S. E., 697, 700, although he had before him no such shocking state of facts as exists in this case, where he said: "It may not be out of place here to gently warn judges of probate that they, too, may become liable upon their official bonds for failure to properly supervise the conduct of guardians appointed in their courts." It is none the less applicable to the supervision of the conduct of administrators and other fiduciaries. Here the Judge willfully and fraudulently misled the administrator and grossly violated his statutory duties to the plaintiffs' loss and the Judge's unlawful gain.

The fact that the surety of the administrator retained "joint control" of the funds, that is, required that the bank withdrawals be by checks countersigned by its local agent, is of no bearing upon this controversy for it resulted from a voluntary, private agreement between the administrator, the surety and the bank and was for the purpose of the protection of the surety from the mistake or fraud of the fiduciary and could be waived by the beneficiary,

the surety, or, as was practically done in this case, by the local agent of the surety by his countersigning blank checks for the convenience of the administrator.

For the reasons indicated the judgment of the Circuit Court is reversed and the case remanded thereto for the entry of judgment against Hartford Accident & Indemnity Company and for such other proper proceedings as may be consistent herewith.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.