15749

FIRST NATIONAL BANK OF GREENVILLE v. UNITED STATES FIDELITY & GUARANTY CO.

(35 S. E. (2d), 47)

Rehearing Denied August 22, 1945.

*Messrs. Morgan & Willimon* and *Stephen Nettles,* all of Greenville, S. C., Counsel for Appellant,

*Mr. W. B. McGowan,* of Greenville, S. C., Counsel for Respondent,

July 11, 1945.

MR. ACTING ASSOCIATE JUSTICE L. D. LIDE delivered the Opinion of the Court.

This case comes before us upon an appeal by the defendant from a judgment against it as surety upon the official bonds of a former Judge of Probate for Greenville County. Although the action was one at law, it was by consent of counsel referred to the Master under a general order of reference, who, after taking the testimony, filed his report to the effect that the plaintiff was not entitled to recover. Upon exceptions to his report, however, it was adjudged by the Court of Common Pleas for Greenville County, in and by the decree of Judge Henderson, that the plaintiff should have judgment against the defendant for the sum of $1,549.16.

The plaintiff, respondent herein, will sometimes be referred to hereinafter as the National Bank or the Bank, and the defendant, appellant herein, as the Guaranty Company.

A recital (as brief as may be practicable) of the undisputed facts out of which this litigation arose is necessary for an understanding of the issues before the Court. Mrs. Fannie C. Scott was the Judge of Probate for Greenville County from 1921 to 1931. And during her administration she appointed by an order dated March 17, 1924, the National Bank as Guardian of Lillie Chamberlain, minor, a colored girl, who had become entitled to $1,500.00 because of an accident sustained by her, and this sum of money was paid to her guardian. The Bank was duly qualified to act in the capacity of guardian through its trust officer and in other like capacities, having indeed so held itself out to the public; and it administered the affairs of its ward until some time in the year 1925, when it decided to give up the guardianship because the ward had moved away from Greenville and the guardian's duties had become too onerous for the small compensation provided by law.

Thereupon, Mr. A. G. Taylor, the Trust Officer, took the matter up with Mrs. Scott, who was then the Probate Judge, and told her that the Bank wanted to surrender the trust, and he testified that she told him to make up a final report and turn the balance of the fund over to her, "that she had the authority to receive it and to handle it as Public Guardian until a successor guardian was appointed." A proper accounting was then made by the trust officer showing that the balance on hand of the guardianship fund was $1,055.26, for which a check was delivered to Mrs. Scott, as Probate Judge, who deposited the same in her official account in the Greenville bank in which she did business. Mrs. Scott then issued letters dismissory (usually termed a final discharge) to the Bank, dated November 23, 1925, reciting that the guardian had made its final accounting and

had (quoting) "turned over to Fannie C. Scott Probate Judge, as Public Guardian, the sum of $1,055.26, to be held by said Probate Judge until said minor is 21 years of age or until a suitable Guardian is appointed in Greenwood County (the child now being a resident there)." It was further recited in the letters dismissory that "(no advertisement necessary in this case)." There were no proceedings taken for the appointment of the Judge of Probate as public guardian for this fund as required by statute, nor was there any notice published of the application for a final discharge, and the ward was not made a party to any such application.

Mrs. Scott retired from office in 1931, and thereafter an investigation of her records was made showing that she had received from various sources the sum of about $38,-500.00, and although the cash and the par value of the investments were about that much, the real estate mortgages representing the investments were insufficient in market value to cover the amount received. Thereupon a representative action in the nature of a creditor's bill was brought in 1931 against Mrs. Scott and the United States Fidelity & Guaranty Company, the surety on her official bonds; a receiver was appointed; and all creditors were called in and made parties. The complaint in that case alleged that Mrs. Scott had carelessly invested the money in her hands, and that by reason of her negligence there would be a substantial loss, and that consequently she was personally liable and her surety was likewise liable for such loss.

The Guaranty Company, as surety on the bonds in the penal sum of $20,000.00, admitted its liability as to some of the claimants, questioned its liability as to others, and denied liability as to still others. A compromise settlement was thereafter effected between the receiver and the surety pursuant to which the surety paid the receiver $12,000.00 (quoting from statement in transcript of record) "in full compromise settlement of its liability to all the claimants and

relinquished its right of subrogation in the collateral held by the receiver," and this compromise settlement was approved by the Court upon the recommendation of the Master, and the Guaranty Company was (quoting from the Court's order) "released and forever discharged of and from any and all liability upon, under, or by reason of the official bonds executed by it as surety for Fannie C. Scott, as Judge of Probate for Greenville County," etc.; and the bonds were thereupon cancelled.

The minor, Lillie Chamberlain, was a party to this cause, being duly represented by her guardian *ad litem,* and testimony was taken on her claim before the Master; a committee from the Greenville Bar Association having undertaken to audit or list the claims. Further quoting from the transcript of record: "The Master, the Circuit Judge, and the Supreme Court all held that Lillie Chamberlain was not entitled to participate in the funds in the hands of the receiver."

This case was reported as *Snyder et al. v. Scott et al.,* 174 S. C., 403, 177 S. E., 665, 666, and the comprehensive decree of Judge Greene was affirmed by the Supreme Court for the reasons therein stated, and the case will hereinafter be referred to as *Snyder v. Scott.* We quote the following from the decree, constituting the judgment of this Court, relating directly to the question of whether or not the Guaranty Company was liable to Lillie Chamberlain on account of the funds belonging to her and received by Mrs. Scott as hereinbefore stated:

"There is quite a distinction between the failure or neglect of a public official to discharge some duty imposed upon him by the law and where he acts without any authority of the law. In the former case his bond is liable and in the latter it is not. The case of *Wieters v. May et al.,* 71 S. C. [9], 14, 50 S. E., 547, 548, states the rule very clearly as follows: 'The bond cannot cover any act or omission of a

constable done without any authority of law whatever, or in his private or personal capacity as man or citizen, but it protects alone for what he does or omits to do unlawfully in the execution of his office or some official duty imposed by law.'

"There being no statutory law in this state authorizing or permitting Mrs. Scott to receive in her official capacity these funds from administrators, executors, or guardians, she acted without any authority of law, and I hold that her official bond is not liable therefor."

In the year 1940, Lillie Chamberlain having reached her majority brought suit against the National Bank seeking to recover the balance due her by the Bank as her guardian, arising from its unlawful payment of her funds to the Probate Judge, and the result of this suit was that it was adjudged that the Bank having taken no proper proceedings to procure its discharge as guardian "it still remains as guardian of this minor," and that its own negligence was the proximate cause of the minor's loss, notwithstanding its good faith, and judgment was rendered against the Bank for the amount due the ward with interest, and upon appeal to this Court we affirmed the order of Judge Oxner, as Circuit Judge, for "the reasons therein clearly stated." This case is reported as *Chamberlain v. First National Bank of Greenville et al.*, 202 S. C., 115, 24 S. E. (2d), 158, and it will be hereinafter referred to as *Chamberlain v. Bank*. The judgment thus obtained was duly paid by the National Bank.

Thereafter the instant action was commenced by the National Bank against the Guaranty Company on its bonds as surety for Fannie C. Scott, as Probate Judge, and it was alleged in the complaint that the Probate Judge had not qualified as required by law to receive the fund in question as public guardian, and that the instructions and representations made by her "were willfully and fraudulently made by said

Probate Judge for the purpose of inducing the plaintiff to turn said fund over to her so as to enable her to unlawfully manipulate, use and control same"; and that but for said instructions, fraudulent representations and purported discharge (or letters dismissory), "the plaintiff would not have turned said fund over to her"; and judgment is sought for the loss thus sustained by the plaintiff.

The answer in addition to a general denial pleads the order of Court and the entire judgment roll in the case of *Snyder v. Scott* as a bar to the plaintiff's cause of action, alleging that the plaintiff stands in the shoes of Lillie Chamberlain and can have no greater rights than she had. It is further alleged that the negligent and unlawful act of the plaintiff in turning over to Mrs. Scott money belonging to Lillie Chamberlain was the proximate cause of plaintiff's alleged loss and damage, and that the plaintiff is estopped from recovering against the defendant.

As we have already stated, the case was referred to the Master under a general order of reference, and he filed his report on October 6, 1944, finding that by reason of the cases of *Snyder v. Scott* and *Chamberlain v. Bank,* and the law as therein laid down, the National Bank was not entitled to recover.

Upon exceptions to the Master's report the case came before Judge Henderson, who filed his decree dated November 18, 1944, sustaining the exceptions and finding that Mrs. Scott fraudulently induced the Bank to pay over the guardianship funds to her, and that neither *res adjudicata* nor estoppel was applicable, but that the Bank was entitled to recover against the defendant as and for a breach of the official bonds, of the former Judge of Probate.

The case comes to this Court upon the appeal of the Guaranty Company upon exceptions which raise three principal points, to wit:

1. That the matter had been finally adjudicated and the bonds involved discharged;

2. That the Probate Judge did not obtain the guardianship fund by fraudulent inducement, nor did she convert it to her own use; and

3. That the Bank's own negligence was the proximate cause of its loss.

The doctrine of *res adjudicata* (or *res judicata*) in the strict sense of that time-honored Latin phrase had its origin in the principle that it is in the public interest that there should be an end of litigation and that no one should be twice sued for the same cause of action. But there is another principle collateral to that, although somewhat different, applicable in determining whether a previous judgment is a bar to an action, and that is, the principle of estoppel which rests upon considerations of justice and equity. We refer in this connection to the well-considered opinion of this Court by Mr. Justice Stukes in the recent case of *Watson v. Goldsmith*, 205 S. C., 215, 31 S. E. (2d), 317.

In the case of *Snyder v. Scott* the Guaranty Company was before the Court as surety upon the official bonds of Mrs. Scott, as Judge of Probate, and there was also before the Court Lillie Chamberlain, the ward whose money had been paid to Mrs. Scott and who was the real party in interest, and who was properly represented; and in that very cause it was adjudged by the Court below and affirmed by this Court that the Guaranty Company was not liable to Lillie Chamberlain because the Judge of Probate had no lawful authority to receive her money. In other words, the ward was before the Court, the very person to whom the funds belonged, and it having been adjudged that she could not recover, we think the Master was correct in holding that neither could her guardian, the National Bank, recover.

The following statement of the law with reference to the requisites of the doctrine of *res adjudicata* in our very recent case of *Bagwell v. Hinton,* 205 S. C., 377, 32 S. E. (2d), 147, 156, is obviously sound:

"Before the defense of *res judicata* is made good, the following elements must be shown: (1) The parties must be the same *or their privies;* (2) the subject-matter must be the same; and (3) while generally the precise point must be ruled, yet where the parties are the same *or are in privity* the judgment is an absolute bar not only of what was decided but of what might have been decided." (Emphasis added.)

We are of opinion that all the elements of *res adjudicata* are present here. The subject-matter, to wit, the Lillie Chamberlain money, was involved in the former suit of *Snyder v. Scott* and is involved in the present cause. In the former suit the question before the Court was the liability of the surety for the Lillie Chamberlain money received by the Judge of Probate, and that is the very question before the Court in the present cause. It is true that there was no finding relating to any alleged fraud on the part of the Probate Judge in the case of *Snyder v. Scott,* but that was manifestly an incidental question which might have been raised and decided, for the identical records were then before the Court and the same sources of information were available. The following statement of the law taken from 34 C. J., 818, is amply sustained by our own cases therein cited:

"A judgment on the merits, rendered in a former suit between the same parties *or their privies,* on the same cause of action, by a court of competent jurisdiction, operates as an estoppel not only as to every matter which was offered and received to sustain or defeat the claim, *but as to every other matter which might with propriety have been litigated and determined in that action.*" (Emphasis added.)

We are also of opinion that the first element, to wit, the identity of parties or privies, is definitely shown by the record. As stated by the learned Circuit Judge, quoting from 34 C. J., 1010, "Privity means a mutual or successive relationship to the same rights of property." And we do not think there could be a much clearer case of *mutual* relationship than that existing between a ward and her guardian. The National Bank apparently did not see fit to come into the cause of *Snyder v. Scott* pursuant to the order of Court therein (quoting from the Master's report) "calling in all claimants to prove their claims and such call was published in the Greenville papers", for it may be reasonably inferred that this notice and the fact that the affairs of the former Judge of Probate were in litigation did not escape the attention of The First National Bank of Greenville with a trust department in charge of a trust officer. Although the ward was the real party in interest, the Bank might have been made a party in her stead upon the theory that it was the trustee of an express trust. If then the Bank had been made a party and the ward had not been made a party the judgment of the Court against the guardian would of course have been binding upon the ward. By the same token a judgment against the ward, the real party in interest, is binding upon her guardian, that is to say, she and the guardian were in privity with each other.

There is no hard and fast rule with reference to the matter of privity, as will appear from the following quotation from 30 Am. Jur., 957, which seems to us to be just and reasonable:

"There is no generally prevailing definition of privity which can be automatically applied to all cases involving the doctrine of *res judicata*. Who are privies requires careful examination into the circumstances of each case as it arises. In general, it may be said that such privity involves a per-

son so identified in interest with another that he represents the same legal right."

And in the case of *McMullin v. Brown,* 2 Hill Eq., 457, the trial Judge whose decree was affirmed said: "And I understand by the term privy, when applied to a judgment or decree, one whose interest has been legally represented at the trial."

The circumstances of the instant case, in our judgment, demonstrate the existence of privity, especially in view of the manifest good faith of the Guaranty Company, which surely was justified in assuming that by reason of the compromise settlement made by it with the receiver, including the payment of the large amount agreed upon and the relinquishment of its right of subrogation, the order of Court releasing it from any and all further liability was final and binding—certainly as to all claims of those before the Court whose rights were specifically passed upon and who were the real parties in interest in the funds in question. Evidently no such settlement would have been made if the Guaranty Company had understood that although the rights of a ward against it were adjudicated, her guardian, who could claim only in the right of the ward, would not be bound by the settlement approved by the Court and the final release of the surety. If the guardian had not been solvent the ward could not have collected the amount due her by her guardian, and she would of course have been precluded from seeking to recover from the Guaranty Company. Is not this in itself sufficient to show the anomaly of permitting the guardian to recover?

Upon the rehearing of this cause there was considerable argument at the bar of this Court on the question of subrogation, and it was contended that the exceptions did not raise this question and that the appellant was not entitled to the benefit of it. But subrogation is merely another way of saying that the rights of a guardian cannot

rise higher than those of his ward. And we are unable to concur with the Court below in the view that a distinction is to be drawn between the Bank as guardian and the Bank in an individual capacity, for surely there can be no doubt that whatever rights the Bank might have must arise solely out of its relationship as guardian to Lillie Chamberlain, the ward. If the ward had been entitled to recover against the surety, the guardian having paid the ward would have been entitled to recoupment, upon the principle of subrogation, but it having been adjudged that the ward could not recover, neither can the guardian.

Moreover, we have carefully scanned the record in this case, and we are unable to find any evidence supporting the allegations charging fraud on the part of the Probate Judge in the receipt of the funds in question. Indeed, we think that the testimony of Mr. Taylor, the Trust Officer, completely negatives any theory of fraud. Mrs. Scott did not seek to procure the money from the Bank, but on the contrary, the Bank initiated the arrangement whereby the fund was paid over, and the only representation made by Mrs. Scott was "that she had the authority to receive it and to handle it as Public Guardian until a successor guardian was appointed". But this was at most merely an erroneous conclusion of law, very probably due to the prevailing misconception that a Judge of Probate is Public Guardian *ex officio*, without appointment.

It is true that a discharge was granted without notice, in violation of the statutory law as contained in Section 213 of the Code, which was likewise merely a mistake of law (likely due to the fact that the Probate Judge knew no creditors were involved); but it will be observed that this section *expressly* places the duty upon a guardian himself to give the required notice, and does not contemplate that the Judge of Probate shall do so. Nor does the Judge of Probate have anything to do with an applica-

tion for appointment as public guardian. See Code, Sec. 8624.

Certainly, Mrs. Scott did not have the legal right to receive the guardianship fund in question, and hence, as was held in *Snyder v. Scott,* her bonds were not liable. And in one of the cases therein cited, to wit, *State ex rel. Elliott v. Jeter,* 59 S. C., 483, 38 S. E., 124, 125, this Court unanimously held in accordance with the established rule that sureties upon the bond of a public official are liable "for the default of their principal in those cases only where it was a duty, under the law, of their principal to receive funds in his official character." But such unauthorized receipt of the funds does not warrant the implication of fraud. As has been already stated, at the time Mrs. Scott received the Bank's check for the guardianship fund she deposited it as a part of her official account, and there is no evidence whatever of misappropriation or conversion. The illegal appointment, made or attempted to be made by her, from time to time, more than a year after she was paid the money, of certain persons as guardians of Lillie Chamberlain, although they did not apply for such appointment or act in that capacity, as will appear by reference to the Court's decree in the *Chamberlain v. Bank case,* was of course improper; but no loss was actually occasioned thereby. And we cannot read fraud into the original transaction merely because of some later irregularities.

Our own case of *Hunter v. Boykin,* 195 S. C., 23, 10 S. E. (2d), 152, 155, is strongly relied on by the respondent, but the facts of that case readily distinguish it from the case at bar, for there the Judge of Probate fraudulently caused certain funds of an estate, in the hands of the administrator, to be paid to himself, which were thereupon converted to his own personal use; having, in order to accomplish this purpose, himself prepared a false and fraudulent return which he caused to be signed by the administrator showing

"full distribution to the distributees each by name." In fact, the *lawyer* Judge of Probate in that case perpetrated a flagrant, indeed a criminal fraud upon an inexperienced *lay* administrator.

Furthermore, it is a recognized and long-established principle of law that generally fraud cannot be predicated on *misrepresentation* as to matters of law, much less on mere mistake of law. There are indeed some exceptions to this rule, but we do not think this case could be deemed to come within any of them. 23 Am. Jur., 809; 37 C. J. S., Fraud, § 55, p. 323; *Koon v. Pioneer-Pyramid Life Ins. Co.,* 175 S. C., 117, 178 S. E., 503.

There is yet another reason for the conclusion that the Guaranty Company is not liable to the National Bank, and that is, the Bank was the author of its own loss, and is therefore estopped to recover. In the case of *Chamberlain v. Bank,* as we have already stated, the Court held that while the Bank acted in good faith its negligence was the proximate cause of its loss. Indeed, it is somewhat difficult to conceive that the trust officer of a national bank could be deemed to have been defrauded by a statement made by a lay Judge of Probate relating to a matter of law. We should think that it would be generally assumed that a trust officer charged with the duty of dealing with and handling estates would be at least as well informed as to the law relating to his employment as would a Judge of Probate who was not a lawyer. And in a matter involving the relinquishment of a trust and the disbursement of its funds a trust officer of a national bank would reasonably be expected in the exercise of ordinary care to consult the bank's attorneys. Even where fraud exists, it may not be available as a cause of action or defense, as will be seen by reference to the discriminating opinion of Mr. Justice Fishburne in the case of *Thomas v. American Workmen,* 197 S. C., 178, 14 S. E. (2d), 886, 136 A. L. R., 1, for it was there held that al-

though fraud may be involved every person must use reasonable prudence and diligence for his own protection. *A fortiori* the protection of a trust represented by him would require at least like reasonable prudence and diligence.

The judgment of the Circuit Court is reversed and the case remanded for entry of judgment in appellant's favor.

Reversed.

MR. CHIEF JUSTICE BAKER and MR. ASSOCIATE JUSTICE TAYLOR concur.

MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES dissent.

MR. ASSOCIATE JUSTICE STUKES (dissenting):

I sincerely regret the necessity of dissenting from the opinion of the majority of the Court, but I think the proposed reversal of the judgment in this case would work a grave injustice, and without impelling precedent. No prior decision of this or any other Court involving similar facts has been cited. On the other hand, I think that the decree on circuit by trial Judge Henderson contains a just and lawful disposition of the issues and I adopt it as a dissenting opinion. Let it be reported. In addition, I take the liberty of stating, as briefly as I can, some of the reasons why I think the main opinion is ill-founded.

The latter rests first upon the doctrine of *res judicata,* which seems to me to be plainly inapplicable to the facts of this litigation. The bank was not a party to *Snyder v. Scott.* Nor did it have a right then against appellant for it had not yet been made to refund its ward's loss. To say that it and the ward were *privies* and it thereby bound by the judgment is stretching the term further than I have ever seen before. Guardian and ward are not privies, according to all the definitions available to me. It is an unusual relationship; like that of trustee and *cestui,* yet the ward holds the legal title to its property. 28 C. J., 1128, 39 C. J. S., Guardian and Ward, § 75; 25 Am. Jur., 8, 69. The guardian has no bene-

ficial title, but. is merely the custodian, manager or con-
servator. I have read the Am. Jur. citation in the leading
opinion and its context and find nothing to support the con-
clusion reached.

In none of the various classes of privies (blood, repre-
sentation, estate or contract) do I find guardian and ward.
2 Bouvier Law Dict., Rawle's 3d Rev., 2714. A good dis-
cussion of privity is found in 50 C. J. I quote the following
excerpts which I think negative the contrary views expressed
in the leading opinion (p. 405) : "Identity of interest is es-
sential to privity." And from p. 408: "A privy in estate
(which guardian and ward must be, if of any kind—inter-
polated) is a successor to the same estate, not to a different
estate in the same property." Surely these observations put
guardian and ward without the pale of a proper definition of
privies. And that is the basis of the proposed application of
the rule of *res judicata* to bar respondent's action.

A recent definition of privies is found in our own case of
*Bailey v. United States F. & G. Co.,* 185 S. C., 169, 193
S. E., 638, 641, wherein the following is quoted with ap-
proval from 2 Black on Judgments, 637: "Privies are those
who are so connected with the parties in estate, or in blood,
or in law, as to be identified with them in interest, and con-
sequently to be affected with them by the litigation, as lessor
and lessee, heir and ancestor, executor and testator. *All
others not included in either of these classes are of course
strangers.*" (Emphasis added.) Then the Court, per Chief
Justice Stabler, said: "It seems clear from the above defini-
tion of privies and from our examination of other author-
ities in reference thereto, that Bailey, under the admitted
facts of this case, does not come within any class of those
above defined as privies. It appears therefore that no privity
exists between the respondent and Thomas, the insured, as
contended by the appellant, which would give to the declara-
tory judgment against Thomas alone the effect of barring
the rights of Bailey."

Clearly and without doubt there is no "mutual or successive relationship to the same rights of property" between guardian and ward, and therefore no privity between them as such term is used in the doctrine of *res. judicata*. I repeat for emphasis that the latter is not and cannot be, applicable to this case and I think it is a serious mistake to attempt to apply it.

It is, at least impliedly, said that the bank is bound, although its loss and resulting right had not then accrued, by the judgment in *Snyder v. Scott* because the latter was purportedly a class action and advertisement was had for claimants against the surety upon the bonds of the faithless probate judge. But I do not think such is the law. The case of *First Nat. Bank v. Edwards,* 134 S. C., 348, 132 S. E., 824, is apposite and enlightening. There the first syllabus is: "One creditor or member of class may sue for benefit of all, but others are not bound unless they participate in proceedings, prove their claims, or otherwise join in proceeding." In that case certain judgment creditors of Edwards brought action against him and his grantee to set aside deeds upon the ground that they were voluntary and in fraud of the grantor's creditors. It purported to be a class action and it was sought to subject the land to the payment of the debts of the grantor according to their rank and priority. The Court found that the bank, the plaintiff in the subsequent action, was without notice of the pendency of the first action (quoting), "nor was it invited in, nor did it take any part therein." The first action resulted in a judgment for the defendants who contended in the second that since the first was in the nature of a creditor's bill, brought by creditors who belonged to the same class as the plaintiff and the latter would have shared in the fruits of victory, the judgment in the first action was a bar to the second, and bound the plaintiff in the latter, but this Court said not, and, in effect, that it would violate justice and right to hold that

one is bound by the judgment in a case to which he is not a party and over which he had no control. High authority was cited for the following elementary principles of justice:

" 'The principle is as old as the law, and is of universal justice, that no one shall be personally bound until he has had his day in court, which means until citation is issued to him, and opportunity to be heard is afforded.' *Mason v. Eldred,* 6 Wall., 231, 18 L. Ed., 783. 'One creditor or member of a class, may sue for the benefit of all, but the others are not bound unless they participate in the proceedings, prove their claims, or otherwise join in the proceeding. 34 C. J., p. 1002; note to *Goldberg v. Loan Co.,* 140 Am. St. Rep., 787; note to *Hill v. Bain,* 2 Am. St. Rep., 877.' "

The circuit judgment in the aforementioned *Edwards case,* which was adopted by this Court on appeal, concluded as follows:

"It can be said that it is hard on the defendants to be made to defend another action which has for its object the same purpose, but that it not so harsh as it would be to deprive the plaintiff of its day in court. It is therefore ordered that so much of the answer of defendants as set up the judgment of the court in the former action by war of bar to this action, be stricken out, and it is ordered, adjudged, and decreed that the plaintiff in this action is not precluded from maintaining this action by reason of the said judgment in the said former action."

And it must be borne in mind that the plaintiff in the *Edwards case* had suffered its loss before the first action was commenced, so the bank in the instant action is in stronger position on that account for it had not suffered previous loss.

. Furthermore, fraud and deceit of the probate judge were not issues in *Snyder v. Scott* or within the scope of the pleadings. The parties upon this appeal are, of course, bound by the reference to that action in the "Statement" in

the agreed Transcript of Record, which is, in material part, as follows: "A representative action in the nature of a creditor's bill was brought against Mrs. Scott in 1931, a receiver was appointed, all creditors were called in and made parties, and United States Fidelity & Guaranty Company, the surety on Mrs. Scott's official bond, was also made a party. The allegation of the complaint was that Mrs. Scott had carelessly invested the money in her hands and that there would be a substantial loss on account of her negligence in the investment of the funds of her office, and that consequently she was personally liable, and that the surety on her official bond was likewise liable for any loss that might result from her negligent conduct of her office."

It is very well settled that a former action is a bar to a subsequent one (*res judicata*) with respect to an issue which was not tried, but might have been, only when the parties are the same or are in privity (which they were not here). This was last said by this Court in *Bagwell v. Hinton,* 205 S. C., 377, 32 S. E. (2d), 147. Conversely, in other cases, as here, a former action can be a bar only when the precise point (here the fraud of the court) has been ruled; and the point here involved (fraud) was certainly not "ruled" (decided) in *Snyder v. Scott,* as the parties hereto have, in effect, agreed per the "Statement" quoted above.

The undisputed testimony in the case at bar is that the respondent bank heard nothing of its former guardianship from the time of its fictitious discharge until the ward sued it about 1940. It is fairly inferable from this testimony that it did not know before of the previous action of *Snyder v. Scott.* This case is thus like that of *First Nat. Bank v. Edwards,* supra. But granting knowledge of the bank of the pendency of the *Snyder case,* why did not the bank intervene or appear? That query might be answered with another: Why did not the surety act to bring in the bank as a party? Both questions have an obvious answer. The bank had not

then been made liable to its ward. Should the Court ignore the obvious and cover its eyes with the sands of the fiction that the bank was a party to *Snyder v. Scott* or in privity with its subsequent, successful antagonist, its former ward? I, most emphatically, do not think so.

In the reasoning relating to *res adjudicata* in the majority opinion there occurs the following: "If then the Bank had been made a party (to *Snyder v. Scott*) and the ward had not been made a party the judgment of the Court against the guardian would of course have been binding upon the ward." This is a new and untenable doctrine to me. How could this or any other infant be bound as to its property rights by judgment in an action to which it was not a party, or privy to a party? Nowhere else have I found it held that jurisdiction of a minor is obtained by the inclusion of the guardian of its property as a defendant. Moreover, the asserted good faith of the Guaranty Company, the appellant, is, I think, entirely irrelevant to the questions of *res judicata* and privity. They are legal doctrines of definite limitations, within which I do not think this case falls.

The finding of fraud on the part of the probate court by trial Judge Henderson is clear and unequivocal. This is a law case and conclusions of fact of the Circuit Court are binding upon this court, if there was any evidence to support the findings. *Weston v. Morgan,* 162 S. C., 177, 160 S. E., 436, per former Chief Justice Blease, and many other (some more recent) decisions which may be found in 3 S. E. Dig., 673, and pocket part, Appeal and Error, Key 1010 (1). Only to ascertain whether there was such can this Court review the evidence. Const. of 1895, Article 5, Section 4. We cannot re-try the case, as in equity, and that, I think, it what is being done by the majority.

Without taking time to repeat all of the testimony, I have no hesitation in saying that it amply supports the factual conclusions of the Circuit Court. However, the following is

taken from the "Statement" in the agreed Transcript of Record, by which the parties are bound: "In 1925 the bank decided to give up the guardianship, and its trust officer went to see Mrs. Scott about doing so. She told him that she was authorized as public guardian to take over the fund, and would do so and discharge the bank upon a proper accounting. The bank made an accounting and gave Mrs. Scott as probate judge its check for the unexpended balance of the fund, and she entered an order discharging the bank." The bank's trust officer testified to the following false assurances of the judge and that but for them, upon which he relied, he would not have turned the estate over to her and accepted her spurious discharge: "The Probate Judge told me to make up a Final Report and turn the balance of the fund over to her, that she had the authority to receive it and to handle it as Public Guardian until a successor guardian was appointed. Acting upon her instructions I prepared the final return of this Estate and turned it over to the Probate Judge together with a check for the balance of the account." *Mrs. Scott did not testify and there is no explanation in the record of her failure to do so.* The fast and loose way in which she thereafter manipulated this guardianship is evidence of evil intent from the time she got her hands upon it. Further reference will be made to the latter.

In connection with the foregoing excerpts from the record and the recitals in the circuit decree there should be read the judgment in the related case of *Chamberlain v. Bank,* 202 S. C., 115, 24 S. E. (2d), 158, which is expressly a part of this appeal record by stipulation. There will be found the fantastic history (shot through with palpable and repeated frauds of the court) of this guardianship, which is evidence of the Court's fraud from the inception of its control, as has been said. The facts of it do not, in my opinion, reasonably admit of the inference of ignorance alone in the conduct of the guilty probate judge; and such inference is

a foundation stone of the conclusion (on this point) of the leading opinion.

Respondent suffered its substantial loss because of the misrepresentations and wrongs of the probate judge, made and done in her official capacity, which were, therefore, her official acts. This, I think, creates a liability upon her official bonds. The surety upon the latter should not escape at the expense of an innocent and well-intentioned fiduciary who was subject to the jurisdiction and orders of the guileful court. The latter did not "well and truly perform the duties of the office," the conditions of the bonds, which were therefore violated, and they should be made to respond in damages to the injured respondent.

In the master's report, adopted and published as a part of the decision in *Snyder v. Scott,* 174 S. C., 403, 177 S. E., 665, 668, it was said: "It is indeed true that where the probate judge, or any other public official under bond, fails to discharge the duties of his office as may be required by law, for instance, where he negligently fails to require a good and sufficient bond for an administrator or any other fiduciary, then and in such case the sureties on his bond would become liable," citing *Williams v. Weeks,* 70 S. C., 1, 48 S. E., 619, and *Gullick v. Slaten,* 169 S. C., 244, 168 S. E., 697. See also the late case of *Hunter v. Boykin,* 195 S. C., 23, 10 S. E. (2d), 152, the facts of which are strikingly similar to those of this case, involving official misrepresentation and deception.

The finding that the bank was the author of its own wrong and therefore estopped to recover is, I think, without basis in justice or reason. Actually, it was the victim of the wrongful acts and representations of the probate judge, whose surety appellant was. It might with comparable reason be said that the surety was the author of its liability because of its assumption of risk upon the bonds. It, too, should have known better than to trust Mrs. Scott. She was unworthy

of the confidence of appellant and respondent alike, but appellant had voluntarily and for profit guaranteed her good faith and conduct in office.

For the foregoing reasons, some of which are additional to those set forth in the circuit decree which will be published, and for the concisely stated reasons and conclusions which it contains, I think the reversal of this judgment would constitute a denial of justice which the Court should not countenance. The result would be to allow the surety to hide behind its compromise payment of twelve thousand dollars upon its total liability of twenty thousand as the volunteer bondsman of a dishonest public official and leave a citizen holding the bag of liability when it was innocent of all save ignorance. Such is far short of ideal justice under the law and I have found no precedent in the latter for so severe a result.

The decree of the Circuit Court (reported herewith) should, I think, be affirmed.

MR. ASSOCIATE JUSTICE FISHBURNE concurs.

The Order of Judge Henderson:

In 1924, Lillie Chamberlain, a minor, lost both feet in a railroad accident, and as compensation the sum of $1,500.00 was paid to her guardian. The plaintiff, the First National Bank of Greenville, maintains a trust department and is duly qualified to act as guardian of the estates of minors. On March 17, 1924, it was appointed guardian of this estate by the Probate Judge for Greenville County. After a short time the bank desired to discontinue its duties as guardian, since the infant ward had moved her residence from Greenville County. The bank as guardian thereupon applied for a discharge to Mrs. Fannie C. Scott, who was then the Probate Judge. On October 22, 1925, at the suggestion of the Probate Judge the trust officer of the bank delivered the unexpended funds in his hands, amounting to $1,055.26, to Mrs. Scott, as Judge of Probate, and received a discharge.

This fund was never paid over by Mrs. Scott. Some time later an action was brought in a case entitled *Ola Snyder v. Mrs. Scott, as Probate Judge, and Others,* in which United States Fidelity & Guaranty Company, the surety of the Probate Judge, was a party. All persons having claims against the Probate Judge or her bondsman were called in, and among many others Lillie Chamberlain was duly made a party to the proceeding. Upon the payment by the surety of the sum of $12,000.00, it was ordered that it be released and discharged from all further liability on its $20,000.00 bonds. In that case it was held that Lillie Chamberlain was not entitled to relief against the Probate Judge or her bondsman. The Court pointed out the distinction "between the failure or neglect of a public official to discharge some duty imposed upon him by the law and where he acts without any authority of the law," and held that as there is no statutory law in this state authorizing or permitting Mrs. Scott to receive in her official capacity funds from guardians, she acted without authority of law, and her official bond was held not liable to Lillie Chamberlain. This decision in the Supreme Court is found at 174 S. C., 403, 177 S. E., 665, 666.

Some time thereafter Lillie Chamberlain brought an action against her guardian, the First National Bank of Greenville, for recovery of the balance of $754.25 of the funds which had been wrongfully paid by the bank to the Probate Judge. In this case, reported at 202 S. C., 115, 24 S. E. (2d), 158, 162, it was held that Lillie Chamberlain was entitled to a judgment against the bank, her guardian. The Court said that the payment of the funds by the bank to Mrs. Scott as Probate Judge was no more effective than the payment of such funds to a stranger to the proceeding, and that as no proper steps had ever been taken by the bank to secure its discharge as guardian, it was liable to the ward for the funds. It was further stated that "it follows

from this that the act of the Bank in improperly—although I am sure the Bank acted in good faith—paying over these funds to the Probate Judge was the proximate cause of the loss which resulted. The act of the Bank in improperly paving these funds over to the Probate Judge made possible the manipulation of the funds which followed", but that "the question as to whether the surety on the Probate Judge's bond is also liable for dereliction on the part of the Probate Judge in receiving these funds is not before this Court, as said surety is not a party to this proceeding."

In the action now before the court, the First National Bank of Greenville is suing the United States Fidelity & Guaranty Company, the bondsman of the Probate Judge, alleging in its complaint that when the plaintiff requested that it be relieved of the guardianship, Mrs. Scott, as Probate Judge, advised the plaintiff to turn all of the guardianship estate over to her as public guardian, and that acting upon these instructions and representations of the Probate Judge, the plaintiff in good faith turned over to Mrs. Scott, as public guardian, the funds of the estate; and that a purported discharge was prepared by the Probate Judge in which it was recited that advertisement was not necessary, and that the funds had been turned over to her as public guardian. The plaintiff also alleges that Mrs. Scott was not qualified and required by law to receive funds as public guardian and that the instructions and representations made by her were willfully and fraudulently made for the purpose of inducing the plaintiff to turn the funds over to her so as to enable her unlawfully to manipulate and control the same, and that but for such instructions and fraudulent representations of the Probate Judge, and the discharge she purported to give the plaintiff, it would not have turned the funds over to her. The complaint then sets forth that as a result of the suit brought by Lillie Chamberlain, it was obliged to pay her $754.25, with interest and expenses ag-

gregating $1,669.19. The plaintiff contends that the acts of Mrs. Scott constituted a breach of her official duty and consequently a breach of the terms and conditions of her official bond, and asks for judgment in the sum of $1,669.16.

In the answer the defendant, as bondsman for the Probate Judge, among other things pleads that the judgment in the case of *Snyder v. Scott* is a bar to the plaintiff's cause of action in this case. It further pleads that the plaintiffs stand in the shoes of Lillie Chamberlain and can have no greater rights than she had; that Lillie Chamberlain was a party to the suit of *Snyder v. Scott* and the Court there held that she had no cause of action on the Probate Judge's bond, and the plaintiff in this case, therefore, is barred.

As another defense it is alleged that the loss, if any, of the plaintiff was caused by its negligent and unlawful acts in turning money belonging to Lillie Chamberlain over to Mrs. Scott without warrant of law and in her individual capacity, and that such negligent and unlawful acts were the proximate cause of its alleged loss and damage, and that the judgment in the case of Chamberlain against the bank is *res adjudicata* of all questions upon which demand is now being made by the plaintiff. Finally the defendant contends that the negligent and unlawful acts of the plaintiff were the cause of its loss and that it is therefore estopped from recovering against the defendant.

The case was referred to the very able Master for Greenville County to take the testimony and to report it, together with his findings of fact and conclusions of law. He duly filed his report on October 6, 1944, in which he holds that in the *Snyder case* the plaintiff was in privity to Lillie Chamberlain. He says that "the plaintiff bank was privy to Chamberlain and is bound wherever Chamberlain is bound," and he concludes "that the law of this case has been laid down in the *Snyder* and *Chamberlain, cases,* supra; that any loss suffered by the plaintiff was due to its own

negligent conduct which, in the *Chamberlain case,* supra, has been adjudged by the Supreme Court as being the proximate cause of the loss which resulted; that what it did made possible the manipulation of the funds which followed; that the bank is in no better position than if the funds in controversy had been paid by it to a stranger; that the bond by defendant herein has already been adjudged not to be liable and that plaintiff is estopped and should not recover."

The case comes before me upon exceptions filed by the plaintiff bank to the report of the Master.

It clearly appears from the evidence, and I so find as a fact, that the former Probate Judge fraudulently induced the plaintiff to pay over the money to her. This payment was made upon the advice and instructions of the Probate Judge, who represented that she had authority as public guardian to receive them, though she well knew that she had not qualified as public guardian. The plaintiff acted upon these instructions and in good faith turned the funds over to Mrs. Scott. The Probate Judge prepared the discharge, though well knowing that she had no authority to issue it without proper advertisement and notice to the ward. These representations were fraudulently made by Mrs. Scott for the purpose of obtaining possession of the funds. The plaintiff relied upon the instructions, and but for them would not have parted with the funds.

As a result of the action brought against it by Lillie Chamberlain, the bank had to pay to her the sum of $1,-251.11 and incurred the expense of $154.30 as Court costs, $143.75 for printing the appeal, and $150.00 as attorney fees.

1 think that a proper determination of the action revolves about the cases of *Snyder v. Scott, Chamberlain v. Bank,* and *Hunter v. Boykin,* 195 S. C., 23, 10 S. E. (2d), 152.

In my opinion, unless the *Snyder case* operates as *res adjudicata,* the plaintiff in this action is entitled to a recovery under the case of *Boykin and Hunter.*

Indeed, in the order of former Circuit Judge Oxner, overruling a demurrer to the present complaint, he states that considering the facts alleged as being true on the demurrer, "I think the case comes within the principle expressed" in the *Hunter case.*

In that case the distributees, at law of Simpson Hunter brought the action against L. D. Boykin, administrator of Simpson Hunter, and his bondsman, American Surety Company, for about $1,800.00, which the plaintiffs alleged had been misapplied by the administrator. On motion of the defendants there were brought in as parties the Probate Judge and his official bondsman, Hartford Accident & Indemnity Company. The Circuit Judge stated that the sole matter presented for his decisions was "the question of the liability of the bonds of the defendants, American Surety Company and Hartford Accident and Indemnity Company," and this was the question which was passed upon by the Supreme Court.

L. R. Jones was the Probate Judge and his bond provided in the usual form that he should well and truly perform the duties of his office as now or hereafter required by law. Near the end of the administrative year the Probate Judge wrote to Boykin, the administrator, to come to his office and make his return. The question arose as to the disbursement of money belonging to some of the heirs whose whereabouts were unknown, and the Probate Judge told the administrator that he would attend to the matter of the advertisement. The Probate Judge then prepared the petition and a discharge, and after publication of the advertisement Boykin received his discharge and paid funds over to the Probate Judge for the absent heirs, together with funds for the distributive share of a minor heir. These checks were

made upon the advice and instruction of the Probate Judge. The proceeds of the two checks were appropriated by the ·Probate Judge, who converted them to his own use.

The Circuit Court held that the loss should fall upon the bondsman of the administrator and that the Hartford Company, the bondsman of the Probate Judge, should be dismissed without liability. Upon appeal to the Supreme Court the lower Court was reversed, the Supreme Court stating that "the record clearly establishes the liability of the administrator and his bondsman to plaintiffs for the missing funds. However, in praiseworthy prevention of another litigation it is sought to apply the alleged liability of the Probate Judge and his bondsman to the administrator, in the nature of recoupment by the latter, directly to the payment of plaintiffs' claim." The Court points out that the administrator acted under the express direction of the Probate Judge and refers to the acts of fraud and imposition by the Probate Judge upon the administrator, who was thereby misled. The Court then says that "consideration of the applicable statutes leaves no doubt that it is the duty of a Probate Judge to properly supervise the actions of the fiduciaries appointed by and reporting to his Court," and sets forth the statutes which the Probate Judge violated in that case. The Supreme Court states that "the record is convincing that the administrator parted with the funds only upon the inducement of the Judge, consisting largely of the issuance of the purported final discharge which was granted upon the fictitious account prepared by the Judge, all in knowing violation by the latter of the quoted statute. It is an inescapable inference that the administrator would have held the funds but for the inducement of the discharge and the false and fraudulent assurances of the judge."

The above recital of facts shows the marked similarity of the *Hunter case* to the one at bar. In the case before us, as alleged in the present complaint, and amply proven by the

evidence, the present plaintiff, the bank, was misled by the fraudulent and unlawful acts and statements of the Probate Judge, and thereby induced to turn over to her the funds of the guardianship estate. Just as in the *Boykin case,* the Probate Judge in giving instructions to Mr. Boykin, violated the statutes, so in the present case, as was well pointed out in the decree of Hon. G. Dewey Oxner, then Circuit Judge, which decree was adopted by the Supreme Court in the case of *Chamberlain v. Bank,* section 213 of the Code, makes it unlawful to discharge any guardian until proper notice has been given in a newspaper, and the section further provides that no discharge shall affect a ward who has not been made a party to such application, either by personal service or by publication.

Such plain violation of the duties of the Probate Judge required by law constituted a breach of her official bond.

The case now before me. differs from the *Boykin case* in that there was no question of *res adjudicata* there involved. It seems to me, therefore, that our next important inquiry would be: Is the plaintiff in this present action barred under the doctrine of *res adjudicata* by the cases of *Snyder v. Scott* and *Chamberlain v. Bank*?

Decisions of our Supreme Court already set forth the essentials of *res adjudicata.* In the very recent case of *Bagwell v. Hinton,* 205 S. C., 377, 32 S. E. (2d), 147, 156, it was said: "Before the defense of *res judicata* is made good, the following elements must be shown: (1) The parties must be the same or their privies; (2) the subject-matter must be the same; and (3) while generally the precise point must be ruled, yet where the parties are the same or are in privity the judgment is an absolute bar not only of what was decided but of what might have been decided."

The leading case of *Johnson-Crews Company v. Folk,* 118 S. C., 470, 111 S. E., 15, 17, states that "the following have been declared to be the essential elements of *res adjudicata*:

(1) Identity of the parties; (2) identity of the subject-matter; (3) an adjudication in the former suit of the precise question sought to be raised in the second suit."

I do not think that *res adjudicata* would apply to the case of *Chamberlain v. Bank,* for the reason that in that action the United States Fidelity & Guaranty Company was not a party, and for the further reason that there is lacking the necessary requirement of the identity of the claim or cause of action. There the issue was the duty owed by the guardian to the ward; here the issue is the duty owed by the Probate Judge to the guardian.

That case clearly sets forth the law as to the liability of a guardian to its ward, and holds the guardian to a strict liability under the law for a proper handling of the funds. As between the guardian and its ward there could be no possible doubt that the funds were paid over wrongfully, to one who had no authority to receive them and thus the same as to a stranger; and that between the guardian and ward the act of the bank was the proximate cause of her loss. It should be noted, however, that the Court stated, as we have seen, that "the question as to whether the surety on the Probate Judge's bond is also liable for dereliction on the part of the Probate Judge in receiving these funds is not before this Court, as said surety is not a party to this proceeding."

The question then is: Does the judgment in the *Snyder case* operate as *res adjudicata* of the present action? In that case The First National Bank of Greenville was not a party, but the inquiry narrows down to the question as to whether or not the bank is bound, although not a party, on account of being in privity with Lillie Chamberlain.

In the case of *Bailey v. United States Fidelity & Guaranty Company,* 185 S. C., 169, 193 S. E., 638, 641, the following definition is given of the word privity: "Privies are those who are so connected with the parties in estate, or

in blood, or in law, as to be identified with them in interest, and consequently to be affected with them by the litigation, as lessor and lessee, heir and ancestor, executor and testator. All others not included in either of these classes are of course strangers."

At 34 C. J., 1010, it is said the "privity means a mutual or successive relationship to the same rights of property." See, also, 50 C. J., 403.

In my opinion the bank is not a privy to Lillie Chamberlain in the former suit. It is not suing here in its representative capacity, as guardian, but solely as an individual, to recoup a loss it has sustained by reason of the fraud.of the former Probate Judge. If the plaintiff had brought the instant action in the capacity of guardian of Lillie Chamberlain against the surety of the Probate Judge for her failure to account for the guardianship fund taken over by the Probate Judge, the action might be barred by reason of privity. Such, however, is not the case. The present action is not for an accounting or recovery on behalf of Lillie Chamberlain of the guardianship fund. It is for recoupment of the plaintiff's individual loss in having made good the Chamberlain fund which the bank in good faith, had paid over to the Probate Judge upon her fraudulent representations. There was no succession on the part of the bank to the same rights of property of Lillie Chamberlain. She did not represent the bank in the former suit, nor was she identified in interest with it. Her claim in the *Snyder case* was that the Probate Judge should account to her as ward, for funds taken over without authority of law, as she had never been appointed public guardian. In the instant case the claim is that the defendant is liable to the plaintiff for loss caused it by the active fraudulent representations of the Probate Judge. Under the *Hunter and Boykin case* the plaintiff has a claim against the surety of Mrs. Scott for the loss sustained by reason of the judgment recovered against it.

The question as to whether the subject-matter of two suits is identical almost always presents a difficult problem. In the *Johnson-Crews case* it is said that this means the same demand, claim or cause of action. The present plaintiff strongly contends that here there is no identity of the subject-matter, since the claims or demands are separate and distinct, founded on different and unlike allegations and requiring different evidence. Interesting as such a question is, I do not think that it is necessary to go into it in this case, since the defendant has failed to establish the first and the third of the essentials of *res adjudicata,* the parties being different and not in privity.

Certainly the precise question was not adjudicated in the *Snyder case.* The question decided in that action was the official duty owed to Lillie Chamberlain by the Probate Judge in connection with her funds taken over by the Probate Judge from her guardian without legal authority. It was held that the bondsman was not liable to Lillie Chamberlain for the loss of the fund and the failure of the Probate Judge to account for it. In the present case the question is the duty owed by the Probate Judge to the plaintiff, properly and honestly to supervise his acts as guardian. No such issue was adjudicated in the *Snyder case.*

As was pointed out in the *Johnson-Crews case,* the rule that a former adjudication is conclusive not only of the precise issues raised and determined, but such as might have been raised affecting the main issue, does not apply unless there is identity of both the parties and the subject-matter. Where there is no such identity, the former judgment is conclusive only as to those issues actually determined.

See, also, *Lyerly v. Yeadon,* 199 S. C., 363, 19 S. E. (2d), 648.

In my opinion the Snyder judgment is not *res adjudicata* of the present action. If the maximum penalty of the defendant's bond had been exhausted by the claimants, in that

sense the plaintiffs here would be bound by that proceeding, since there would be nothing left of the bond to pay out. But the bond was not exhausted and there remains an unexpended $8,000.00 on it against which the plaintiff asserts its claim.

As to the defense that the bank caused its own loss by paying the money over to the Probate Judge, while that was soundly held in the case of *Chamberlain v. Bank,* to make the guardian liable to its ward, it can have no application to the Probate Judge or her surety. For a guardian to be acquitted of responsibility of a fund he must be able to point to some legal disposition of it. This is the high duty owed by a guardian to his ward. In the case at bar, however, the duty was owed to the guardian by the Probate Judge, and Mrs. Scott's surety can not be heard to claim that the bank was negligent in relying upon the fraudulent representations of the defendant's principal. I do not see how the bank could be held to be estopped as against the Probate Judge or her surety.

At the hearing before me the principle was invoked by the defendant that where one of two innocent persons must suffer, the one responsible should bear the loss. That principle, in my opinion, has no application to the present case. As between the bank and the Probate Judge, surely Mrs. Scott could not claim to be the innocent party. The present defendant bonded the Probate Judge and guaranteed the faithful performance of her duties.

In my opinion, then, the plaintiff is entitled to a judgment against the defendant surety company, and the exceptions to the report of the Master should be sustained.

As to the amount of the judgment, I think that it should include the $1,251.11 paid by the bank to Lillie Chamberlain, the court costs of that suit amounting to $154.30, and the printing costs on the appeal amounting to $143.75. This makes a total of $1,549.16. I do not think that the item of

$150.00 attorney fees paid by the bank to its attorney should be included in the judgment. As a general rule I think that it is the policy of our law that in the absence of contract one is not required to pay his adversary's attorney fees.

It is accordingly ordered that the exceptions to the report of the Master be, and they are hereby, sustained.

It is ordered that the plaintiff, The First National Bank of Greenville, have judgment against the defendant, United States Fidelity & Guaranty Company, in the sum of Fifteen Hundred Forty-nine and 16/100 Dollars, together with the costs of this action.

On Petition for Rehearing.

PER CURIAM.

We have carefully considered the petition for rehearing herein; and we find that all the points mentioned in the petition were duly considered in the preparation of the majority opinion of this Court and of the dissenting opinion, and that hence we would not be warranted in granting a rehearing.

The petition does not comply with the requirement of Rule 17 of this Court that a petition for a rehearing shall be "without argument," but waiving this requirement *pro hac vice* we may observe, in view of the statements contained in the petition relating to the question of identity of subject-matter, that in the original case of *Snyder v. Scott,* 174 S. C., 403, 177 S. E., 665, the Court held that the Guaranty Company as surety was not liable to the ward, Lillie Chamberlain, for the unlawful receipt of her funds by the Judge of Probate. In other words, the specific question before the Court was whether or not the Judge of Probate was liable in her official capacity for the unlawful receipt of the funds in question. If the Court had answered this question affirmatively, this would certainly have been a final adjudication of liability against the surety; and since the answer was in the negative, the converse adjudication is likewise final.

In the instant cause the identical question was before the Court for determination, bottomed upon the additional allegation that the Judge of Probate had induced the Bank to pay over the funds (which it held for its ward, Lillie Chamberlain) to her by fraudulent representations as to her authority to receive the same and discharge the Bank. However, as pointed out in the majority opinion, a representation made as to a matter of law, in the absence of certain factors which were not present, does not constitute remediable fraud.

The designation in the majority opinion of the Lillie Chamberlain money as the subject-matter of both actions corresponds, we believe, to the approved definition of the same as being the matter or thing concerning which the wrong has been done; and this is, ordinarily, the property, or the contract, or other thing involved in the dispute. *Chick Springs Water Co. v. State Highway Department,* 178 S. C., 415, 183 S. E., 27; *Ophuls & Hill v. Carolina Ice & Fuel Co.,* 160 S. C., 441, 158 S. E., 824; *Columbia National Bank v. Rizer,* 153 S. C., 43, 150 S. E., 316, 68 A. L. R., 443. But it is really immaterial whether the subject-matter (or the subject of the action) be so defined or whether it be more abstractly defined as being the main primary right which has been broken, and by means of whose breach a remedial right arises, which has also been recognized as an acceptable definition.

The cases cited in the petition for rehearing were not cited in the briefs filed in behalf of the respondent, but we have reviewed the same, and we think a brief recital of their holdings will show that they are not applicable to the instant case. In the first case cited, to wit, *Johnston-Crews Co. v. Folk,* 118 S. C., 470, 111 S. E., 15, it was adjudged in the original cause that a deed attacked as being made in fraud of creditors was not fraudulent or void, but was a valid deed; and in the subsequent suit the validity of the

deed was expressly recognized, but it was held not to constitute notice to certain creditors under the recording act. And in the original case the trial Judge specifically held that the validity of the deed under the recording act was not then before the Court.

In the second case cited, to wit, *Chick Springs Water Co. v. State Highway Department,* 178 S. C., 415, 183 S. E., 27, the first suit was for damages done by the overflow of plaintiff's property by impounded waters from the rain of 1929, and the Court states that the subject of the action was the negligent construction of the culvert; while in the later case the Court held that the cause of action was for damages done by the overflow of plaintiff's property by impounded waters from the rain of 1934, and that the subject of this action was not the original negligence in the construction of the culvert, but the negligent refusal to enlarge the culvert after written warning.

In the third case cited, to wit, *Priester v. Southern Ry. Co.,* 151 S. C., 433, 149 S. E., 226, the Court held that a judgment against a wife in an action for injuries sustained by her in a railroad crossing collision was not *res judicata* in an action brought by her husband for damages resulting to him from loss of services, companionship and expenses, suffered by him as the result of the injuries to his wife. But in a case of this character liability to the husband is separate and distinct from liability to the wife, and a judgment *for or against* her in a suit brought by the wife would have no effect upon the question of liability in a subsequent suit brought by the husband. The defendant's liability was *dual* in character, and the discharge of the same as to one of the plaintiffs had no effect on the other.

The petition for a rehearing is denied.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES TAYLOR and LIDE concur.

MESSRS. ASSOCIATE JUSTICES STUKES and FISHBURNE dissent, favoring a rehearing.